# Illinois Official Reports

## Appellate Court

*People v. Pena*, 2014 IL App (1st) 120586

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL PENA, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-12-0586 |
| Filed | October 15, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for aggravated battery of a peace officer arising from an incident in which he spit on a correctional officer after being placed in a holding cell was upheld over his contentions that he was not proved guilty beyond a reasonable doubt, that he was denied his right to represent himself, and that the trial court failed to make a proper inquiry with respect to his claim of ineffective assistance of counsel, since a videotape of the incident corroborated the officer's testimony that defendant spit on him after being placed in the cell and there was no basis for disturbing any of the trial court's findings, the record did not show that defendant ever made an articulate and unmistakable demand to proceed *pro se*, and the trial court properly relied on its own knowledge in rejecting defendant's allegations with respect to the assistance provided by his counsel. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CR-20877; the Hon. James B. Linn, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier and Kathleen Weck, both of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Ahmed M. Baset, Assistant State's Attorney, of counsel), for the People.

Panel

JUSTICE HYMAN delivered the judgment of the court, with opinion. Presiding Justice Pucinski and Justice Mason concurred in the judgment and opinion.

## OPINION

¶ 1    After a bench trial, defendant Daniel Pena appeals his conviction for aggravated battery of a peace officer, contending that the State failed to prove him guilty beyond a reasonable doubt because the officer's testimony was not credible and was disputed by a videotape of the incident. Pena also contends that he was denied his constitutional right to self-representation and that the trial court failed to conduct a proper inquiry into his *pro se* posttrial claim of ineffective assistance of counsel. The trial court sentenced Pena to six years' imprisonment as a Class X offender based on his criminal history. We affirm.

¶ 2    With regard to Pena's contention that the State fell short of proving guilt beyond a reasonable doubt, the trial court as the trier of fact occupies a superior position to assess Officer Lee's credibility and resolve any conflicts in the evidence, and it had the benefit of the videotape, even though Lee's testimony conflicted somewhat from the first trial. In addition, the trial court did not deny Pena his right to self-representation; no error occurred and the plain error doctrine does not apply. Finally, we find the trial court acted properly when it dismissed, without further inquiry, Pena's *pro se* posttrial motion of ineffective assistance of counsel.

¶ 3                                BACKGROUND

¶ 4    Following a 2009 jury trial, Pena was convicted of aggravated battery of a peace officer. 720 ILCS 5/12-4(b)(18) (West 2006). A videotape of the incident, however, went missing during that trial, only to be located by the State after the trial concluded. While his direct appeal was pending, Pena filed a petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2008)) claiming actual innocence and a due process violation based on the discovery of the missing videotape. The circuit court summarily dismissed Pena's petition, but on appeal, this court granted the State's motion for summary remand and remanded the petition for further proceedings under the Act. *People v. Pena*, No. 1-09-3276 (2010) (dispositional order). On remand, the parties agreed that the videotape was relevant, and the circuit court granted Pena a new trial. (Following that ruling, this court

dismissed defendant's initial direct appeal. *People v. Pena*, No. 1-09-0932 (2011) (dispositional order).)

¶ 5      On the next court date, Pena informed the court that he wanted to fire his public defender. The trial court denied his request, stating that Pena would then have to represent himself, and commented on the excellent job counsel had done for him. Pena replied that he understood, but that he needed a one-week continuance to file a motion. The court explained to Pena that he could not choose his own court-appointed attorney and, therefore, would have to represent himself. Pena said he was going to represent himself, and the trial court admonished him about the possible sentences he faced, the disadvantages of self-representation, and that he would be held to the same standards as a lawyer. Pena told the court that he did not understand why his trial counsel disagreed with everything his appellate counsel told him. When appointed counsel asked the court if Pena was going to be allowed to represent himself, the court responded "[n]o, I don't think he's capable of it." Thereafter, Pena asked a few questions about the videotape and never again raised the issue of self-representation. Three months later, Pena hired private counsel, and the public defender withdrew.

¶ 6      At trial, Cook County correctional officer Alan Lee testified that on September 22, 2007, he responded to an "all available" call in Division 9 of the jail and saw Pena resisting officers while on the ground, handcuffed and shackled. Lee and a group of officers escorted Pena to a downstairs holding cell, and Officer Lee could see that Pena was angry and upset and that he was bleeding from his mouth. Officer Lee's responsibility was to unlock and open the holding cell door to allow officers to place Pena inside the cell, and he did not physically touch Pena or assist with Pena's movement to the cell. When Pena refused to enter the cell, the officers picked him up, carried him in, and placed him on the bench in the back of the cell. Pena repeatedly yelled obscenities, and as the officers left the cell, Pena rose from the bench, and from a distance of seven feet, spit blood at the direction of Officer Lee, which landed on Lee's left forearm. Pena also spit into the toilet and told Lee that he was going to kill his "bitch ass." Officer Lee testified that he was upset and had to take an AIDS test.

¶ 7      Officer Lee acknowledged that during the first trial, he testified that Pena ran to the front of the cell, but after watching the videotape before testifying at the second trial, he saw that Pena did not do so. The video was played in court with Lee narrating the events. Lee testified that the video showed that as he closed the cell door, Pena spit in his direction, and it landed on his left forearm. Pena then spit into the toilet. Lee acknowledged that the video actually did not show Pena spitting on him, but testified that there was no reason why blood would have landed on his left forearm when Pena was standing forward of the toilet. The prosecutor replayed the video segment and asked the court to pay special attention to the audio. Afterwards, Lee testified that you can hear Pena spit, after which you hear the officer state "[o]h man, he just spit on me."

¶ 8      Officer Lee acknowledged that at first trial he testified that Pena ran to the front of the cell, lunged forward with his body, and made a blowing motion with his mouth to spit, but that now he was testifying that Pena walked forward to the toilet, spit at the officer, then spit into the toilet. Lee maintained that the video depicted these actions. Lee said after spitting on him, Pena spit into the toilet several times because his mouth was bleeding.

¶ 9      Cook County correctional officer Edward Kern testified that six months earlier, on March 27, 2007, Pena agreed to speak with him about an incident in the jail Kern was

investigating. Pena asked to speak with him alone, away from the other detainees. Once the two were alone, Pena spit in the officer's face and told him "I'm going to kill your bitch ass."

¶ 10    The parties stipulated that at 6 p.m. on September 22, 2007, Pena was involved in an incident with correctional Officer Williams during which Pena sustained an injury to his mouth that required medical treatment for bleeding and damaged teeth. Pena was taken to Cermak Hospital and had three teeth replaced.

¶ 11    Pena testified that during an argument, Officer Williams punched him twice, knocking out two of his teeth and loosening a third. Williams pulled Pena down to the ground, and Officer Davis then kicked him in the head, causing him to lose consciousness. Pena regained consciousness, began choking on his blood and teeth, and spit them out of his mouth. Pena later received a settlement payment of $10,000 from those officers. Pena further testified that he never had any interaction with Lee and denied spitting on him. He testified that his threat was directed at Officer Williams, not Lee, and also denied threatening and spitting at Officer Kern six months earlier. In rebuttal, the State submitted a copy of Pena's prior conviction for child abduction as impeachment.

¶ 12    In announcing its decision, the trial court stated that the videotape allowed it to hear and see what happened that day, and hear Officer Lee spontaneously say that Pena spit on him. The court then found that the State proved Pena guilty beyond a reasonable doubt. Immediately thereafter, the trial court sentenced Pena to the minimum term of six years' imprisonment as a Class X offender based on his criminal history.

¶ 13    Pena filed a timely *pro se* motion for a new trial claiming that his trial counsel rendered ineffective assistance. Pena alleged that counsel should have called Lieutenant Navarette to testify at the second trial because the video would have impeached his testimony from the first trial. Pena also claimed that defense counsel stood during trial and said " '[m]y client guarantees that if you let him go this time nothing like this will ever happen again' (or close to this remark)." Although Pena acknowledged that counsel retracted the remark, Pena claimed that he suffered prejudice because it was heard by the judge and the entire courtroom. With neither Pena nor counsel present, the trial court found Pena's *pro se* motion meritless and denied it, noting that his lawyer was going to file a posttrial motion. There is no indication in the record, however, that counsel ever filed a posttrial motion.

¶ 14                                    ANALYSIS
¶ 15                        Sufficiency of Evidence to Sustain Conviction on
                              Aggravated Battery of Peace Officer

¶ 16    Pena first contends that the State failed to prove him guilty of aggravated battery of a peace officer beyond a reasonable doubt because Lee's testimony was not credible and was disputed by the videotape. Pena claims that Lee's credibility was impeached because his testimony during the second trial differed significantly from the first trial, where he stated that Pena ran to the front of the cell, lunged forward, and blew spit on him. Pena maintains that the video does not show that he spit in Officer Lee's direction, but instead, shows that he was spitting into the toilet. Pena asserts that he had a legitimate reason for spitting blood, and any saliva that landed on Officer Lee's arm could have been an accident.

¶ 17    The State responds that the videotape corroborated Lee's testimony and showed that Pena was irate, rose from the bench and moved forward in the cell closer to the door. The State

argues that the audio established that Pena spit at that precise moment, after which Officer Lee spontaneously exclaimed "[o]h man, he just spit on me." The State further argues that Pena then threatened to kill the officer, which showed that the spitting was not accidental.

¶ 18    When a defendant claims that the evidence is insufficient to sustain his or her conviction, this court must determine whether any rational trier of fact, after viewing the evidence in the light most favorable to the State, could have found the elements of the offense proved beyond a reasonable doubt. *People v. Baskerville*, 2012 IL 111056, ¶ 31. This standard applies whether the evidence is direct or circumstantial, and does not allow this court to substitute its judgment for that of the fact finder on issues involving witness credibility and the weight of the evidence. *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). "Under this standard, all reasonable inferences from the evidence must be allowed in favor of the State." *Baskerville*, 2012 IL 111056, ¶ 31. In a bench trial, the trial court, sitting as the trier of fact, determines the credibility of the witnesses, weighs the evidence, resolves conflicts in the evidence, and draws reasonable inferences. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). We will not reverse a criminal conviction based on insufficient evidence unless the evidence is so improbable or unsatisfactory that there is reasonable doubt as to defendant's guilt (*People v. Givens*, 237 Ill. 2d 311, 334 (2010)), nor will we reverse simply because defendant claims that a witness was not credible or that the evidence was contradictory (*Siguenza-Brito*, 235 Ill. 2d at 228).

¶ 19    To prove Pena guilty of aggravated battery of a peace officer, the State must show Pena intentionally or knowingly, and without legal justification, made physical contact of an insulting or provoking nature to a person he knew was a government officer engaged in the performance of his or her authorized duties. 720 ILCS 5/12-4(b)(18) (West 2006).

¶ 20    Viewed in the light most favorable to the State, the evidence shows that as Officer Lee and a group of correctional officers escorted Pena to a holding cell inside the jail, Pena was irate and yelling obscenities at the officers and bleeding from the mouth. When Pena refused to enter the holding cell, officers carried him inside and placed him on the bench at the back of the cell. Officer Lee testified that, as the officers left the cell, Pena rose from the bench, and from a distance of about seven feet, spit blood at him which landed on his left forearm, then threatened to kill his "bitch ass." This evidence suffices to allow the trial court to find Pena intentionally spit on the correctional officer and, thus, convict him of aggravated battery of a peace officer.

¶ 21    Having thoroughly reviewed the record, including the video, we agree with the trial court that the video corroborates Officer Lee's testimony. The video shows, in pertinent part, that as the officers leave the cell, Pena repeatedly screams threats, obscenities and racial slurs, then stands up and walks a few steps forward. As Lee closes the cell door, one can hear Pena spit. At that moment, the camera is blocked by the lieutenant; however, immediately following the sound of Pena's spitting, Officer Lee spontaneously and distinctly states, "he spit on me, man."

¶ 22    Contrary to Pena's claims that the video disputes Lee's testimony and that the spit could have accidentally landed on the officer's arm, we find the trial court could reasonably infer from the sound of Pena spitting, immediately followed by the officer's spontaneous remark, that Pena spit on him intentionally, and not accidentally. This conclusion finds support in the evidence of Pena's combative conduct toward the officers, and his threat to kill the officer's "bitch ass." Although Officer Lee's testimony conflicted in some respects from that given at the first trial, the trial court, which was in the superior position to assess Lee's credibility and resolve any conflicts in the evidence, found with the benefit of the video that Pena was proven

guilty of the charged offense beyond a reasonable doubt. We find no basis for disturbing the trial court's findings regarding the credibility of this witness and the weight of his testimony (*Jackson*, 232 Ill. 2d at 284), and therefore affirm.

¶ 23                              Self-Representation

¶ 24    Pena next contends that the trial court's refusal to let him represent himself denied his constitutional right to self-representation. Pena claims that he made a clear, unambiguous request to represent himself, and the court abused its discretion when it denied that request based on his lack of legal knowledge rather than determining if his waiver of counsel was voluntary and intelligent.

¶ 25    The State responds that Pena forfeited his argument because he did not raise it in a posttrial motion and did not argue for plain error review in his opening brief. Alternatively, the State argues that plain error does not apply because no error occurred–Pena did not make a clear and unambiguous waiver of counsel, but instead, was requesting new counsel. In reply, Pena argues that the second prong of the plain error doctrine applies because the improper denial of self-representation constitutes structural error.

¶ 26    The United States Supreme Court has expressly held that the denial of self-representation at trial is a structural error that renders a criminal trial fundamentally unfair and requires automatic reversal. *People v. Averett*, 237 Ill. 2d 1, 12-13 (2010) (citing *Washington v. Recuenco*, 548 U.S. 212, 218 n.2 (2006)). Accordingly, although Pena did not properly preserve his contention for review (*People v. Enoch*, 122 Ill. 2d 176, 186 (1988)), we consider his argument for plain error (Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967)).

¶ 27    The plain error doctrine is a limited and narrow exception to the forfeiture rule which can only be invoked after defendant first demonstrates that a clear or obvious error occurred. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). Pena has a constitutional right to represent himself, but to invoke that right, he must knowingly and intelligently waive his right to counsel. *People v. Baez*, 241 Ill. 2d 44, 115-16 (2011). "It is 'well settled' that waiver of counsel must be clear and unequivocal, not ambiguous." *Id*. at 116 (citing *People v. Burton*, 184 Ill. 2d 1, 21 (1998)). Pena must "articulately and unmistakably demand[ ] to proceed *pro se*," and if he fails to do so, he waives his right to self-representation. (Internal quotation marks omitted.) *Id*. (quoting *Burton*, 184 Ill. 2d at 22). One reason Pena must make an unequivocal request to waive counsel is to prevent him from appealing the denial of his right to self-representation. *Id*.

¶ 28    Our review of the record leads us to conclude that Pena did not seek to represent himself but, instead, sought to fire his public defender and replace her. The record shows that Pena was granted a new trial, and on the next court date, he informed the court that he wanted to fire his public defender. The trial court initially denied that request and, in the colloquy that ensued, told Pena that if he fired his counsel, he would have to represent himself. It was thus the trial court, not Pena, who initiated the idea of Pena representing himself, and after this first exchange, Pena did not state that he wanted to represent himself but, instead, requested a week's continuance to file a motion. The court again told Pena that he would have to represent himself because he could not choose his court-appointed counsel, and it was then that Pena stated "[y]eah, I'm going to represent myself, Your Honor." But, after the court advised Pena of the disadvantages and dangers of self-representation, Pena did not pursue that request, but complained that he did not understand why his trial counsel disagreed with everything his

- 6 -

appellate counsel had told him. The trial court then clarified for appointed counsel that Pena was not going to be allowed to represent himself and remarked "I don't think he's capable of it."

¶ 29    Notwithstanding that comment, the entire exchange shows that Pena did not make a clear and unequivocal waiver of counsel, nor did he definitively invoke his right of self-representation by articulately and unmistakably demanding to proceed *pro se*. Instead, Pena stated that he would represent himself only after the trial court advised him that self-representation would be his only option if he fired his public defender. At the time, the trial court obviously had no idea Pena had funds to hire private counsel and expressed doubt that he would be able to do so as he had been incarcerated for some time and was indigent. Within three months, however, Pena did hire private counsel who represented him throughout the second trial. We must indulge in every reasonable presumption against waiver of the right to counsel (*Baez*, 241 Ill. 2d at 116), and in light of Pena's own conduct following his remark that he was going to represent himself (*Baez*, 241 Ill. 2d at 118), we conclude that he never truly expressed a desire or intention to do so. Accordingly, we find that the trial court did not deny Pena his right to self-representation, that no error occurred, and the plain error doctrine does not apply in this case.

¶ 30                                   Ineffective Assistance of Counsel

¶ 31    Pena finally contends that the trial court failed to conduct an inquiry into his *pro se* posttrial claim of ineffective assistance of counsel, but instead denied the motion *sua sponte* when neither he nor his counsel was present, requiring that his motion be remanded to the trial court for the proper inquiry under *People v. Krankel*, 102 Ill. 2d 181 (1984). Pena argues that the trial court should have considered his claims, but instead relied on its mistaken belief that counsel would be filing a motion for a new trial, which was never filed.

¶ 32    The State responds that the trial court properly denied Pena's motion without an inquiry because it had no obligation to investigate the allegations, which were patently without merit and could not support a claim of possible neglect of the case. The State asserts that Pena's complaint that counsel did not call the lieutenant to testify was an unassailable matter of trial strategy, and the allegedly prejudicial remark made by counsel does not appear in the record.

¶ 33    Where defendant raises a *pro se* posttrial claim that trial counsel rendered ineffective assistance, the trial court should examine the factual basis of the claim to determine if it has any merit. *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003). The court can evaluate defendant's *pro se* claim by either discussing the allegations with defendant and asking for more specific details, questioning trial counsel regarding the facts and circumstances surrounding defendant's allegations, or relying on its own knowledge of counsel's performance at trial and determining whether the allegations are facially insufficient. *Id*. at 78-79. If the court finds that the claims reveal possible neglect of the case, then it should appoint new counsel to represent defendant at a hearing on his *pro se* motion. *Id*. at 78. But, if the trial court finds defendant's allegations to be without merit or to pertain only to matters of trial strategy, new counsel should not be appointed and the court may deny the *pro se* motion without further inquiry. *Id*.; *People v. Ward*, 371 Ill. App. 3d 382, 433 (2007). Generally, determining which witnesses to call involves a matter of trial strategy that is unassailable and cannot form the basis of a claim that counsel rendered ineffective assistance. *Ward*, 371 Ill. App. 3d at 433 (citing *People v.*

*Enis*, 194 Ill. 2d 361, 378 (2000)). On review, the appellate court determines whether the trial court's inquiry into defendant's *pro se* claim was adequate. *Id.*

¶ 34 We find no error in the trial court's decision to dismiss Pena's *pro se* motion without conducting any further inquiry. Pena alleged that counsel should have called Lieutenant Navarette as a witness to show that the video would have impeached his testimony from the 2009 jury trial. But, this evidence would have been irrelevant–Navarette only testified as a witness in the first case, and thus, counsel had no reason to call the lieutenant as a witness to impeach testimony absent from the second trial. See *United States v. Finley*, 708 F. Supp. 906, 909 (N.D. Ill. 1989) ("[A]s a general matter of relevance, a person who does not testify at trial and who is not the source of statements admitted for their truth is not subject to impeachment.").

¶ 35 In *United States v. McClain*, 934 F.2d 822, 832 (7th Cir. 1991), the government decided not to call an informant as a witness. During the trial, tapes were played which contained statements made by the informant. *Id.* On appeal, the defendant argued that he was denied his opportunity to impeach the informant, thus violating his right to confront the witnesses against him. *Id.* The Seventh Circuit found that the Federal Rules of Evidence allow for impeachment of a "witness," but that the informant was not a witness in the case. Defendant claimed that he would have called the informant as a witness. *Id.* at 832-33. The Seventh Circuit found no merit in this argument, stating that "the trial judge correctly decided that questioning Burnett solely to impeach him would be irrelevant." *Id.* at 832. Similarly, Navarette testified during the first trial, but not the second trial. Pena argued in his *pro se* motion that counsel should have called Navarette as a witness during the second trial for the sole purpose of showing that the video impeached his testimony from the first trial. But, Navarette's testimony from the first trial was not at issue during the second trial. Accordingly, this evidence is irrelevant.

¶ 36 As to Pena's second contention, the record contains nothing to indicate that counsel ever made a statement such as "[m]y client guarantees that if you let him go this time nothing like this will ever happen again." Pena asserts in his motion that after making this statement, counsel said "I retract that." If this occurred, the statement, including the retraction, would have been reflected in the record. It is not. In assessing Pena's allegations, the trial court may rely on its own knowledge to determine the factual sufficiency of the allegations, and the trial court expressly stated "I find the *pro se* motion is without merit and is respectfully denied." The trial court, thus, evaluated Pena's claims of ineffective assistance and found them wanting, which obviated further inquiry. *Moore*, 207 Ill. 2d at 78. We find no error in the ruling.

¶ 37 CONCLUSION

¶ 38 We affirm the judgment of the circuit court.

¶ 39 Affirmed.