2016 IL App (1st) 140328

No. 1-14-0328

Opinion filed May 24, 2016

Second Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No.12 CR 2729 |
| RONNIE FRENEEY, | ) ) | The Honorable |
| Defendant-Appellant. | ) ) ) | Dennis J. Porter, Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice Pierce and Justice Simon concurred in the judgment and opinion.

**OPINION**

¶ 1    Ronnie Freneey was involved in a scuffle with a courtroom deputy at the Daley Center, following a probate proceeding in which Freneey was a litigant. After a bench trial, he was convicted of attempting to disarm a peace officer and aggravated battery of a peace officer, and sentenced to a total of three years in prison.

¶ 2    Freneey contends that the evidence used to convict him was insufficient because (i) the State witnesses were impeached and contradicted by the defense witnesses' testimony, and (ii) there was insufficient evidence of his intent. We find that on the basis of all the evidence, a

reasonable trier of fact could credit the State witnesses over the defense witnesses and draw inferences of Freneey's intent to disarm and batter the deputy. Freneey also argues that the State's evidence was not enough to defeat his affirmative defense of self-defense to excessive force by the deputy. We reject this contention because Freneey did not raise a valid self-defense claim.

¶ 3    Finally, Freneey asserts that the trial court violated his right to a fair trial by misremembering witness testimony. We hold that, even if the trial court did so (which is unclear from the record), the testimony lacked enough importance to affect the verdict.

¶ 4                                   BACKGROUND

¶ 5    On January 27, 2012, Freneey appeared as a party to a probate case in courtroom 1809 at the Daley Center, Chicago. Freneey's mother needed a guardian, and Freneey and his niece, Erica Freneey, both wanted the position. They proceeded without counsel, but attorney Ellen Douglass had been appointed guardian *ad litem* for Freneey's mother.

¶ 6    According to Cook County Sheriff's Deputy Matthew Crawley and court clerk Sandrena Bracy, who were in the courtroom that day, Freneey had been disruptive during the court hearing and had yelled profanities at witnesses. Douglass testified that Freneey was "very emotional" about the case, but only made grumbling noises during the hearing and called one witness a liar. Freneey testified that he had said "she's lying" during one witness's testimony.

¶ 7    The hearing finished late in the afternoon, and the presiding judge left the bench. Freneey, his niece, Douglass and other litigants and attorneys remained in the courtroom to receive written orders from Bracy. Freneey's mother (who was in a wheelchair) started to depart the room and Erica Freneey went to hug her.

¶ 8    Deputy Crawley testified that when Erica Freneey tried to hug her aunt, Freneey jumped up, yelled "get the fuck off her," and "went at [Erica Freneey] with his arm raised." Crawley responded by grabbing Freneey's arms and pinning them behind his back, because Crawley believed that Freneey intended to hit Erica. Crawley informed Freneey that he was under arrest and pulled Freneey backwards towards the judge's bench. With Freneey facing the bench, Crawley tried to handcuff Freneey but needed to release Freneey's arms to do so. Crawley put handcuffs on one of Freneey's wrists, but Freneey swung his hands backwards and broke loose from Crawley's grip.

¶ 9    Crawley tackled Freneey to the ground. Crawley recalled hearing Douglass yelling at him to let Freneey go. As they wrestled on the ground, Freneey hit Crawley in the face. Crawley used his radio to call for help, and then felt Freneey pulling at Crawley's gun, which he carried in a holster on his right hip. Crawley used his right hand to pin the gun in place and his left hand to keep Freneey on the ground. At that point, another judge came into the courtroom, and other sheriff's deputies. The judge held Freneey's legs down while Crawley handcuffed Freneey. The altercation resulted in Crawley receiving several cuts and bruises on his face and a lump on the top of his head. On cross-examination, Crawley testified that he had been interviewed by investigators later that day and told them that he noticed bleeding after the altercation but was not sure exactly when his injuries occurred.

¶ 10    Sandrena Bracy testified that following the hearing, Freneey jumped up and yelled "you bitch you can't have my mom" at his niece before charging towards her with his right arm raised. While Crawley was trying to handcuff Freneey, Douglass distracted him by yelling "let [her] client go." Freneey raised his arm and hit Crawley in the face, while unintentionally kicking Bracy in the stomach. Crawley and Freneey then wrestled on the ground and Bracy saw Freneey

touching Crawley's gun and trying to remove it from the holster. Bracy wasn't sure whether Crawley said anything to Freneey before restraining him.

¶ 11 After Crawley radioed for assistance, a number of deputies came to the courtroom, including Jennifer Griffith. Griffith testified that when she arrived outside the courtroom, someone in the hallway told her that "he's trying to take the deputy's gun." Inside the courtroom, she saw Crawley on the floor trying to restrain Freneey. Griffith did not see Freneey trying to touch Crawley's gun. Freneey already had one handcuff on his wrist, and, with Griffith's help, Crawley finished handcuffing Freneey.

¶ 12 Ellen Douglass testified that when Erica Freneey approached Freneey's mother, Freneey started walking towards them and saying "get off my mother, leave my mother alone." Freneey did not raise his arm. Crawley walked up behind Freneey and grabbed Freneey's arms, but Douglass did not hear him say anything to Freneey. Instead, Crawley pulled Freneey backwards across the courtroom, flung him around and pressed him against the judge's bench. Freneey then started pushing back, Crawley knocked into a file cabinet, and both men fell to the ground. Crawley landed on top of Freneey; they thrashed about as Freneey was "bucking" to get Crawley off of him. Douglass told Freneey to calm down. Douglass did not see Freneey strike Crawley or see him touch Crawley's gun, and Bracy was not close enough to the fight to be struck. A group of deputies arrived and told Douglass and the other people in the room to leave, but Douglass did not; there were so many officers (more than Douglass thought necessary) and "it was just a lot of craziness," so Douglass worried that Freneey "was about to get his ass kicked." Douglass knew of cases of police brutality and "wasn't putting up with it," so she wanted to stay to witness what was happening.

¶ 13      Freneey testified that after the hearing, he told his niece to "stay away from my mother," but did not curse or raise his arm. When Freneey stood up to leave, Crawley grabbed his wrist and twisted Freneey's arm behind his back to the point that Freneey felt like his shoulder might dislocate, and started pushing Freneey down the aisle of the courtroom. Crawley did not say anything to Freneey. Crawley grabbed Freneey by the back of the neck and slammed him down into a desk, then pinned him down onto the ground so he could not move. Freneey reared back because Crawley was hurting his shoulder. Crawley did not try to handcuff Freneey. On the ground, Crawley was "moving me around making it look like it was a fight," so that Crawley could "take this revolver and shoot me," but Freneey was passive and did not hit Crawley. Freneey did not try to take Crawley's gun, but he did put his hand on the holster and squeeze it for a second to make sure the gun was still in the holster.

¶ 14      Before issuing the verdict, the trial court commented on the evidence. The court held that Crawley's testimony was corroborated by the photographs of his face showing several scrapes or bruises. The court noted that Crawley, Bracy, and Douglass all agreed that Freneey was upset during the court hearing and "losing his cool." Griffith's testimony supported Crawley's and Bracy's account. The court then commented on Bracy and Douglass:

> "The clerk's testimony is impeached on some area [*sic*] as to what was going on, but it is corroborated by other people in some areas with regard to the photos, for example, and what was going on and then Miss Douglass was saying get off of him? She agrees that she was saying – Miss Griffith – Miss Douglass, rather, is saying – Miss Douglass was saying 'get off of him' because she believed that it was excessive and she thought he was 'going to get his ass kicked,' that's a quote, and she wasn't going to put up with it. She disobeyed an order to leave the courtroom so she could be a

witness. And she knows what happens with police when black males are involved, according to her. So I would not call Miss Douglass exactly a disinterested witness in this."

¶ 15    The court found Freneey guilty of attempting to take Crawley's weapon and aggravated battery against Crawley. The court sentenced him to a total of three years of imprisonment. Freneey's counsel filed a posttrial motion arguing that the evidence was insufficient to support a conviction and he was denied a fair trial. The trial court denied the motion.

¶ 16                                                ANALYSIS

¶ 17                                   Sufficiency of the Evidence

¶ 18    The relevant inquiry when challenging the sufficiency of the evidence involves, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Campbell*, 146 Ill. 2d 363, 374 (1992). In a bench trial, the trial court determines the credibility of witnesses, weighs the evidence, resolves conflicts in the evidence, and draws reasonable inferences from the evidence. *People v. Pena*, 2014 IL App (1st) 120586, ¶ 18. As a reviewing court, we will not substitute our judgment for that of the trier of fact on questions concerning the weight of the evidence or the credibility of the witnesses. *Campbell*, 146 Ill. 2d at 375. And, we will not reverse a criminal conviction unless the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *Id*.

¶ 19                              Attempt Disarming of Peace Officer

¶ 20    A person commits attempted disarming of a peace officer when, without the consent of the officer, the person attempts to take a weapon from another person that he or she knows to be a peace officer, while the officer is engaged in the performance of official duties. 720 ILCS

5/31-1a(b) (West 2012). (The parties disagree whether the offense is best characterized as "disarming a peace officer" or "attempt disarming a peace officer." They agree that Freneey never actually disarmed Crawley, and do not disagree as to the relevant elements of the offense.) A person commits attempt when, with intent to commit a specific offense, he or she does any act which constitutes a substantial step towards committing that offense. 720 ILCS 5/8-4(a) (West 2012).

¶ 21     We are satisfied that the evidence presented at trial supports the conviction. Crawley testified that during the scuffle, he felt Freneey pulling at the gun holstered on Crawley's right hip. Bracy also testified that she saw Freneey touching the gun and trying to take it out of the holster. Griffith testified that before she entered the courtroom in response to Crawley's radio call, a person in the hallway told her that "he's trying to take the deputy's gun." Douglass did not see Freneey try to take Crawley's gun, but Freneey admitted that he deliberately touched the holster during the struggle. The trial court could reasonably credit Crawley, Bracy, and Griffith over the defense witnesses, and infer that Freneey had tried to take Crawley's gun as opposed to only verifying its position in the holster.

¶ 22     Freneey argues that the State did not prove that he intended to disarm Crawley or took a substantial step towards doing so, for which he cites *People v. Kirchner*, 2012 IL App (2d) 110255. But *Kirchner* points out that intent to disarm can be inferred from the conduct of the defendant and the surrounding circumstances, including a defendant's physical acts of resistance and an officer's testimony that he felt a "tugging" on his handgun. 2012 IL App (2d) 110255, ¶ 17. Freneey was physically resisting Crawley; Crawley felt Freneey pulling on the gun. Freneey admitted that this contact was deliberate (though he downplayed its extent).

¶ 23    Freneey next argues that he could not have taken a substantial step towards disarming Crawley because, since he was pinned to the ground and Crawley was trying to immobilize his arms, he could not have taken Crawley's gun. But Freneey's arm was sufficiently unencumbered to deliberately reach out and touch Crawley's holster, so he was not fully immobilized. In the context of a scuffle where two men attempt to physically overpower each other, the trial court could reasonably find that Freneey would have been capable of taking Crawley's gun if he was capable of grabbing the holster long enough for Crawley to pin the gun in place with one hand. Again, *Kirchner* contradicts Freneey's position. 2012 IL App (2d) 110255, ¶ 19 (evidence sufficient to prove defendant took substantial step to disarm officer where officer felt handgun being tugged and contact with gun was long enough for officer to pin down defendant's hand on gun; contact was not incidental and next step was successful disarming).

¶ 24                    Aggravated Battery of Peace Officer

¶ 25    A person commits aggravated battery when, in committing a battery, he or she knows the individual battered to be a peace officer performing official duties. 720 ILCS 5/12-3.05(d)(4) (West 2012). Again, the evidence supports conviction. The trial court found Crawley's testimony that Freneey struck him to be corroborated by the photographs of Crawley's face. Crawley's injuries were sufficiently serious to indicate that Freneey knowingly battered him, as opposed to the injuries being incidental to the scuffle. The trial court also could infer Freneey's intent to batter Crawley from Freneey wrestling with Crawley while Crawley tried to restrain him. Contrary to Freneey's claim, there was sufficient evidence of intent.

¶ 26    Freneey's challenge to this conviction asks us to reweigh evidence and reevaluate witness credibility, but we will not do so; the evidence was not "improbable, unconvincing or contrary to human experience." (Internal quotation marks omitted.) *People v. Shaw*, 2015 IL App (1st)

123157, ¶ 20. The trial court could credit Crawley's version of events—that Freneey was about to strike Erica Freneey and then struck Crawley while Crawley attempted to restrain him—over Freneey's story that Crawley pantomimed an entire wrestling match to make Freneey look like the aggressor. The trial judge resolves conflicts in the evidence. *People v. Simpson*, 2015 IL App (1st) 130303, ¶ 44. The court was not required to credit Freneey or Douglass over Crawley (and the other state witnesses). As a reviewing court, we will not reverse simply because Freneey claims that a witness was not credible or that the evidence was contradictory. *Pena*, 2014 IL App (1st) 120586, ¶ 18.

¶ 27                                        Self-Defense

¶ 28        Freneey next argues that there was insufficient evidence to support his aggravated battery conviction because he raised a valid claim of self-defense, which the State failed to disprove.

¶ 29        A police officer may use "any force which [he or she] reasonably believes to be necessary" (internal quotation marks omitted) to arrest a person or defend himself or another from the arrestee during the arrest. *People v. Mandarino*, 2013 IL App (1st) 111772, ¶ 48. If an officer uses excessive force, the arrestee is justified in using force to resist that arrest, and may claim self-defense. *People v. Haynes*, 408 Ill. App. 3d 684, 690 (2011). (Freneey was not charged with resisting arrest, but the same principles apply to his aggravated battery conviction.)

¶ 30        Once a defendant has raised self-defense as an affirmative defense, the burden shifts to the State to disprove self-defense beyond a reasonable doubt. *People v. Lee*, 213 Ill. 2d 218, 224-25 (2004). "The elements of self-defense are: (1) that unlawful force was threatened against a person; (2) that the person threatened was not the aggressor; (3) that the danger of harm was imminent; (4) that the use of force was necessary; (5) that the person threatened actually and subjectively believed a danger existed that required the use of the force applied; and (6) the

beliefs of the person threatened were objectively reasonable." *Id*. at 225. If the State negates any one of the elements of self-defense, the defendant's claim of self-defense fails. *Id*.

¶ 31    Freneey's argument has many problems. First, we are unconvinced that the force Crawley used to restrain Freneey was excessive. The evidence shows that after Freneey approached his niece with his arm raised, Crawley pinned Freneey's arms behind his back and pulled him away from the niece, then tried to handcuff him. The wrestling match between Crawley and Freneey was part and parcel of Crawley's attempt to keep Freneey away from his niece. The evidence does not demonstrate that the amount of force Crawley used was excessive and not proportionate to the need. See *People v. Jones*, 2015 IL App (2d) 130387, ¶ 24 (where officer grabbed defendant's arm, twisted it, and took defendant to ground when defendant continued to pull away, officer's use of force was not excessive because "[d]efendant fails to explain how the arrest could have been accomplished with a lesser degree of force"). Because Freneey's battering Crawley occurred before the other deputies arrived, their participation in the restraint (which Douglass characterized as excessive) does not matter. Freneey cannot argue that the arrival of other law enforcement officers rendered Crawley's earlier actions inappropriate.

¶ 32    Second, there is a logical problem with Freneey's self-defense claim. An affirmative defense has the legal effect of admitting that the acts occurred, but denying legal responsibility for them. *People v. Brant*, 394 Ill. App. 3d 663, 671 (2009). But Freneey denied intentionally striking Crawley; he described himself as passive. (Indeed, he argued that he did not knowingly strike Crawley.) Freneey cannot on one hand argue that he only accidentally struck Crawley but on the other argue that he intentionally and justifiably struck Crawley in self-defense. Self-defense is an all-or-nothing proposition.

¶ 33    Third, even if Freneey could raise a valid claim of self-defense against excessive force, his claim would fail. The State only needed to negate one of the six self-defense elements to prevail, but it can negate the first two elements without considering Freneey's state of mind. The State showed that Crawley's force against Freneey was not unlawful; it was in response to Freneey's threatening behavior towards another litigant. Further, before Crawley intervened, Freneey initiated the aggression against his niece.

¶ 34    For all these reasons, we find that Freneey could not make a valid claim of self-defense, and, in any event, the State disproved that claim. The evidence is sufficient to support the aggravated battery claim.

¶ 35                                    Fair Trial

¶ 36    Finally, Freneey contends that he was denied a fair trial because the judge misremembered Douglass's testimony while rendering the verdict. The parties argue at length whether this claim should be reviewed under the plain error doctrine. We need not wade into that morass because we do not believe that error occurred, or, if it was error, that it had any effect on the verdict.

¶ 37    According to Freneey, the judge's statement (*supra* ¶ 14) confused the evidence recalling that Douglass had testified that she said "get off of him" during the scuffle, when Douglass actually testified that she said "calm down." But the beginning of the paragraph is a discussion of Bracy's testimony, and Bracy testified that Douglass was yelling at Crawley to let Freneey go. It is by no means certain that the judge actually misremembered Douglass's testimony or whether he accurately remembered Bracy's testimony about Douglass's actions (though not her precise words). The rest of the paragraph—that Douglass believed the number of deputies was excessive, she thought Freneey was going to "get his ass kicked," she stayed to be a witness

because she knew "what happens when police and black males are involved" and she "wasn't putting up with it"—accurately reviewed Douglass's testimony.

¶ 38        More importantly, even if the judge erroneously attributed "get off of him" to Douglass, we do not see how it could have had any impact on the decision. Douglass observed the scuffle between Crawley and Freneey. Whether she said "get off of him" or "calm down" does not bear on what Freneey did or thought during this incident. It only speaks to the collateral question of Douglass's credibility. The trial court concluded that Douglass favored Freneey because she sympathized with his situation and worried about his safety; the trial court based this conclusion, in large part, on Douglass's testimony that she thought Freneey might be injured by officers and stayed in the room to prevent it from happening. We conclude that, even if the trial court remembered that Douglass said "calm down" instead of "get off of him" it would not have altered the trial court's evaluation of Douglass's credibility.

¶ 39        Even if the trial court had credited Douglass, her testimony supported the State's case on several points: she testified that Freneey was "very emotional" during the case, approached his niece and told her to leave his mother alone, and was "bucking and thrashing" against Crawley when Crawley restrained him, to the point where Douglass advised Freneey to calm down. Douglass was a defense witness, but she did not unequivocally support Freneey's version of events.

¶ 40        We do not believe the trial court's evaluation of Douglass's testimony denied Freneey a fair trial. Thus, we need not consider whether the plain error doctrine applies to this claim.

¶ 41        Affirmed.